IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DURAN TYSON, JR., | CASE NO. 3:22-cv-339 |
| Petitioner, | DISTRICT JUDGE JOHN R. ADAMS |
| vs. | |
| WARDEN WANZA JACKSON-MITCHELL, | MAGISTRATE JUDGE JAMES E. GRIMES JR. |
| Respondent. | **REPORT & RECOMMENDATION** |

Petitioner Duran Tyson, Jr. filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254. Doc. 1. Tyson is in custody at the Mansfield Correctional Institution due to a journal entry of sentence in the case *State v. Tyson*, Allen County Court of Common Pleas, Case No. CR 2019 0334. The Court referred this matter to a Magistrate Judge under Local Rule 72.2 for the preparation of a Report and Recommendation. For the following reasons, I recommend that the Petition be denied.

**Summary of facts**

In habeas corpus proceedings brought by a person under 28 U.S.C. § 2254, factual determinations made by state courts are presumed correct. 28 U.S.C. § 2254(e)(1). The petitioner has the burden of rebutting that presumption by clear and convincing evidence. *Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012).

The Ohio Court of Appeals for the Third Appellate District summarized the facts underlying Tyson's conviction as follows:

> {¶2} This case arises from a May 30, 2019 incident in which Tyson and another male, Zyshon Stiggers ("Stiggers"), robbed a gas station at gunpoint in Lima, Ohio. The following day, Deputy Barry Friemoth ("Deputy Friemoth"), an officer with the Allen County Sheriff's Office, was investigating the incident near Tyson's residence when he observed Tyson walking in the area. Deputy Friemoth announced that he was a law enforcement officer and began to approach Tyson. In response, Tyson produced a gun and fired multiple shots at Deputy Friemoth before fleeing to his residence. Deputy Friemoth was not physically injured during the encounter. Shortly thereafter, Tyson was taken into law enforcement custody.

*State v. Tyson*, No. 1-19-72, 2020 WL 6268408, at *1 (Ohio Ct. App. Oct. 26, 2020).

**Procedural background**

*Trial court proceedings*

In June 2019, a ten-count complaint was filed against Tyson in the Allen County Court of Common Pleas, Juvenile Division. *Tyson*, 2020 WL 6268408, at *1. The matter was then bound over to the Allen County Court of Common Pleas. *Id*. In September 2019, the Allen County grand jury indicted Tyson on eight counts—aggravated robbery (count 1), attempted murder (count 2), felonious assault (count 3), improperly discharging a firearm at or into a habitation or school safety zone (count 4), discharge of a firearm on or near a prohibited premises (count 5), receiving stolen property (count 6), carrying a

2

concealed weapon (count 7), and tampering with evidence (count 8). Doc. 6-2, at 2–6 (Exhibit 1). Counts one, two, and three contained a three-year firearm specification. *Id.* Tyson, through counsel, pleaded not guilty. *Id.* at 9 (Exhibit 2).

In October, under a plea agreement, Tyson withdrew his not-guilty plea and pleaded guilty to counts one and two with the firearm specifications and count seven. Doc. 6-2, at 11–12 (Exhibit 3). The remaining counts were dismissed. *Id.* In November, the trial court sentenced Tyson to 9 to 13.5 years in prison on counts one and two, three years on each firearm specification, and one year on count seven, all to run consecutively, for a total of a 25 to 29.5 years in prison. *Id.* at 14–20 (Exhibit 4).

*Direct appeal*

Tyson, through new counsel, appealed to the Ohio court of appeals. Doc. 6-3, at 22 (Exhibit 5). In his brief, he raised the following assignments of error:

> 1. The trial court erred in sentencing Mr. Tyson to an indefinite term of incarceration of 25–29.5 years.
>
> 2 The trial court erred in sentencing Mr. Tyson to serve consecutive sentences.

*Id.* at 36 (Exhibit 6). In October 2020, the Ohio court of appeals affirmed the trial court's judgment. *Id.* at 167–91 (Exhibit 8).

Tyson appealed to the Ohio Supreme Court. Doc. 6-2, at 193 (Exhibit 9). In his memorandum in support of jurisdiction, Tyson asserted the following propositions of law:

1. A sentence issued against a juvenile offender that
is unsupported by facts and is inconsistent with R.C.
2929.11 and 2929.12 results in a term of
incarceration that violates the constitutional
protections of both the United States and Ohio
Constitutions.

2. A consecutive sentence is unconstitutional where
it is imposed without evidence to support findings
pursuant to R.C. 2929.14(C)(4)(b) that the harm
from two or multiple offenses was so great or
unusual as to warrant the imposition of consecutive
sentences.

*Id.* at 198  (Exhibit 10). In March 2021, the Ohio Supreme Court declined under

its rule of practice 7.08(B)(4) to accept jurisdiction of Tyson's appeal. *Id.* at 237

(Exhibit 11).

*Federal habeas corpus petition*

On March 1, 2022, Tyson filed a federal habeas corpus petition under 28

U.S.C. § 2254. Doc. 1. He raised the following grounds for relief:

**Ground One**: Ineffective Assistance of Counsel for
failing to … present mitigating factors of defendant's
youth during sentencing. See Strickland v.
Washington.

*Supporting facts*: 1. Defendant was a youth at
the time of the underlying conduct. 2. Trial Counsel
failed to present mitigating evidence of defendant's
youth at sentencing. 3. This failure on the part of
Trial Counsel was so deficient that it fell below an
objective standard of reasonable representation.

**Ground Two**: Consecutive sentences relied upon an
unreasonable interpretation of facts in light of the
record, in violation of 28 U.S. 2254(d)(2).

*Supporting facts*: 1. The Trial court issued
consecutive sentencing in this case. 2. The Trial

> Court improperly applied Ohio Revised Code Section 2929.14. 3. Consecutive sentences were not necessary to protect the public from future harm. 4. The trial court did not have evidence of the harm caused by two or more of the multiple offences as necessary under R.C. 2929.14. 5. The Trial Court's imposition of consecutive sentences was not supported by the record.

Doc. 1, at 6–8; *see also* Doc. 1-2 (petition brief). The Warden filed a Return of Writ, Doc. 6, and Tyson filed a Traverse, Doc. 12.

**Legal Standard**

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104–132, 110 Stat. 1214, petitioners must meet certain procedural requirements to have their claims reviewed in federal court. *Smith v. Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 430 (6th Cir. 2006). "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." *Daniels v. United States*, 532 U.S. 374, 381 (2001). Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Failure to exhaust applies when state remedies are "still available at the time of the federal petition." *Id.* (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)). But when state court remedies are no longer available, procedural default rather than exhaustion applies. *Id.*

*Exhaustion*

A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A). A state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action. 28 U.S.C. § 2254(b),(c); *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) ("Federal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts") (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)). A constitutional claim for relief must be presented to the state's highest court to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845-48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). And a habeas petitioner must present both the factual and legal underpinnings of the claims to the state courts. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). This means that the "petitioner must present his claim to the state courts as a federal constitutional issue— not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).

*Procedural default*

Procedural default may occur in two ways. *Williams*, 460 F.3d at 806. First, a petitioner procedurally defaults a claim by failing "to comply with state

procedural rules in presenting [the] claim to the appropriate state court." *Id*. In *Maupin v. Smith*, the Sixth Circuit directed courts to consider four factors when determining whether a claim is barred on habeas corpus review due to a petitioner's failure to comply with a state procedural rule: (1) there is a state procedural rule applicable to the petitioner's claim and whether the petitioner failed to comply with that rule; (2) the state court enforced the procedural rule; (3) the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim; and (4) the petitioner can demonstrate cause for failing to follow the rule and actual prejudice by the alleged constitutional error. 785 F.2d 135, 138 (6th Cir. 1986); *see also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'" *Williams*, 460 F.3d at 806 (citing *O'Sullivan*, 526 U.S. at 848). "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Id*. While the exhaustion requirement is satisfied because there are no longer any state remedies available to the petitioner, *see Coleman v.*

*Thompson*, 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims that bars federal court review, *Williams*, 460 F.3d at 806.

To overcome a procedural bar, petitioners must show cause for the default and actual prejudice that resulted from the alleged violation of federal law that forms the basis of their challenge, or that there will be a fundamental miscarriage of justice if the claims are not considered. *Coleman*, 501 U.S. at 750.

*Merits review*

To obtain habeas relief under 28 U.S.C. § 2254, a petitioner must show either that the state court decision (1) resulted in a decision contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court ("contrary to" clause); or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings ("unreasonable application" clause). 28 U.S.C. § 2254(d).

Under the *contrary to* clause, a federal habeas court may grant a writ if the state court "arrives at a conclusion opposite to that reached by the [United States Supreme] Court on a question of law or [based on] a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). Under the *unreasonable application* clause, a federal habeas court may grant the writ "if the state court identifies the correct governing legal principle from

th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413. "Clearly established federal law" refers to the holdings, not dicta, of the Supreme Court's decisions as of the time of the relevant state court decision, and legal principles and standards flowing from Supreme Court precedent. *Id*. at 412; *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005). A state court is not required to cite Supreme Court precedent or reflect an awareness of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts" such precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002); *Lopez v. Wilson*, 426 F.3d 339, 358 (6th Cir. 2005). If the Supreme Court has not addressed the petitioner's specific claims, a reviewing district court cannot find that a state court acted *contrary to*, or *unreasonably applied*, Supreme Court precedent or clearly established federal law. *Carey v. Musladin*, 549 U.S. 70, 77 (2006); *White v. Woodall*, 572 U.S. 415, 426 (2014) ("Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to *extend* that precedent or license federal courts to treat the failure to do so as error.").

    In determining whether the state court's decision involved an *unreasonable application* of law, the court uses an objective standard. *Williams*, 529 U.S. at 409. "A state court's determination that a claim lacks merit precludes federal habeas review so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*,

562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Bray v. Andrews*, 640 F.3d 731, 738 (6th Cir. 2011). "A state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

**Discussion**

*1.     Ground one is procedurally defaulted.*

In Ground one, Tyson argues that trial counsel was ineffective because "counsel allowed a bound-over minor to plead guilty to the most serious offenses in the indictment, agree[d] to indefinite, concurrent sentences in a case where the facts do no[t] support such types of sentences, and then counsel failed entirely to put on any mitigating information regarding Petitioner's youth … or success while under supervision." Doc. 1-2, at 6.

A successful ineffective-assistance claim requires a petitioner to demonstrate that: (1) "counsel's performance was deficient"; and (2) "the deficient performance prejudiced the defense." *Jones v. Bradshaw*, 46 F.4th 459, 487–88 (6th Cir. 2022) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). The first prong is satisfied when a petitioner "show[s] that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. "The second prong is satisfied when the petitioner 'show[s] that there is a reasonable probability

10

that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. (quoting *Strickland*, 466 U.S. at 694).

Ground one is procedurally defaulted, as Tyson concedes. Doc. 12, at 4.[1] Tyson didn't raise an ineffective assistance of trial counsel claim on direct appeal, as he was required to do since the claim is based on the state court record.[2] *See Buell v. Mitchell*, 274 F.3d 337, 349 (6th Cir. 2001) ("Ohio courts have consistently held that claims that can be adjudicated based on facts in the record can only be presented on direct appeal") (citing *State v. Lentz*, 639 N.E.2d 784, 785 (Ohio 1994)); *see also O'Sullivan*, 526 U.S. at 845 (a petitioner must present a claim to the state appellate court and the state supreme court).

Tyson argues that he can show cause to overcome the procedural bar. Doc. 12, at 11. He submits that "the legal basis for the ineffective assistance of counsel claim was unavailable at the time" he filed his appeal in the Ohio courts. *Id*. The "legal basis" he relies on is *State v. Patrick*, 172 N.E.3d 952, 953 (Ohio 2020), in which the Ohio Supreme Court held that a trial court must "separately consider the youth of a juvenile offender as a mitigating factor before imposing a life sentence under R.C. 2929.03, even if that sentence

---

[1] Tyson's traverse isn't numbered. The page numbers I cite refer to the ECF numbering at the top of the page.

[2] Tyson's counsel in this habeas case also represented Tyson during his direct appeal.

includes eligibility for parole." *See also* Doc. 12, at 12–15. The Ohio Supreme Court found that a trial court's failure to do so violates the Eighth and Fourteenth Amendments to the United States Constitution and Article I, Section 9 of the Ohio Constitution. *Patrick*, 172 N.E.3d at 953.

It is not clear what, precisely, Tyson is asserting as cause to excuse his procedural default. Tyson explains:

> In the case at bar, the legal basis for the ineffective assistance of counsel claim was unavailable at the time of the filing of petitioner's direct appeal. Petitioner filed his Direct Appeal on March 20, 2020. Petitioner filed his Motion in Support of Jurisdiction to the Ohio Supreme Court on December 12, 2020. Here, Petitioner's counsel was ineffective for failing to present any mitigating factors of youth to the Court to consider pursuant to 2929.12. The law upon which Petitioner relies, *State v. Patrick*, 164 Ohio St. 3d, was decided by the Supreme Court of Ohio on December 22, 2020.

Doc. 12, at 11–12; *see also id.*, at 15 ("the claim was not available in State Court At the time of Petitioner Tyson's direct appeal"). The problem with Tyson's argument—that because *Patrick* didn't exist at the time Tyson appealed, appellate counsel didn't raise an ineffective assistance of trial counsel claim on appeal—is that it undermines Tyson's ineffective assistance of trial counsel claim. This is so because the reasonableness of counsel's performance is evaluated from counsel's perspective at the time of the alleged error. *Strickland*, 466 U.S. at 689. Trial counsel at sentencing in November 2019, couldn't raise to the trial court the *Patrick* case because *Patrick* didn't exist. Appellate counsel couldn't raise to the court of appeals the *Patrick* case because

12

it didn't exist. So neither counsel was ineffective for failing to argue a rule based on a case that didn't exist. *See Strickland*, 466 U.S. at 689. And ineffective assistance of appellate counsel can't serve as cause to excuse Tyson's procedural default in this way, to the extent that is what Tyson is arguing.

But Tyson also submits that "State v. Patrick is reliant on firmly established precedent of Supreme Court of the United States." Doc. 12, at 12 (citing *Miller v. Alabama*, 567 U.S. 460, 473 (2012)).[3] This suggests that Tyson believes that the rule announced in *Patrick* was not new when *Patrick* was decided in December 2020. That also explains why Tyson alleges that trial counsel was ineffective for not arguing at sentencing the rule in *Patrick*. But it also means that if the rule in *Patrick* wasn't new, appellate counsel should have on direct appeal raised an ineffective assistance of trial counsel claim for counsel's failure to raise the rule on which *Patrick* was based. But appellate counsel didn't raise an ineffective assistance of trial counsel claim—counsel only argued that, due to Tyson's youth, Tyson's sentence violated the Eighth Amendment. The Ohio courts rejected Tyson's argument. Tyson doesn't challenge that ruling here.[4] Instead, Tyson raises for the first time in his

---

[3]    In *Miller v. Alabama*, the Supreme Court held that the Eighth Amendment is violated when a court imposes a sentence of life without parole for a defendant who was under 18 years old when the crimes occurred. 567 U.S. 460 (2012).

[4]    A stand-alone claim based on *Patrick* would fail, because federal habeas may only be granted for state court decisions that are contrary to or

federal habeas petition an ineffective assistance of trial counsel claim based on counsel's failure to raise the issue during sentencing. But Tyson never presented an ineffective assistance of trial counsel claim to the Ohio courts, as he concedes, and he doesn't explain what his cause is to excuse that procedural default.

Ineffective assistance of appellate counsel may serve as cause to excuse a procedural default, but only if the ineffective assistance of appellate counsel claim itself is not procedurally defaulted. *See Edwards v. Carpenter*, 529 U.S. 446, 451–53 (2000). Here, any ineffective assistance of appellate counsel claim is procedurally defaulted because Tyson didn't file a Rule 26(B) Application to Reopen and the time to do so has passed.[5] *See* Ohio App. R. 26(B)(1) (applications to reopen must be filed within 90 days of the court of appeals' decision). Tyson hasn't identified "good cause" for not filing a Rule 26(B) application, *see id.*, or otherwise describe cause to excuse his procedural default. Because any ineffective assistance of appellate counsel claim is itself procedurally defaulted, ineffective assistance of appellate counsel can't serve as cause to excuse Tyson's procedural default. *See Edwards*, 529 U.S. at 452.

In short, Tyson can't have it both ways. If the groundwork for the rule in *Patrick* should have been so obvious to trial counsel such that trial counsel

---

unreasonably apply United States Supreme Court precedent, 28 U.S.C. § 2254(d)(1), whereas *Patrick* is an Ohio Supreme Court case.

[5]     A Rule 26(B) application to reopen is the method to raise ineffective assistance of appellate counsel. *See* Ohio App. R. 26(B)(1).

was ineffective for not raising it at sentencing, then it would have been equally obvious to appellate counsel, who failed without excuse to raise an ineffective assistance of trial counsel claim on appeal. But if the groundwork for the rule in *Patrick* wasn't obvious to trial counsel, then trial counsel wasn't ineffective.

Finally, to the extent that Tyson is attempting to argue—without expressly saying so—a "novelty" theory for cause to excuse the procedural default of ground one, that argument also fails. "A claim qualifies as novel," and can constitute cause to excuse a procedural default, "if, 'at the time of [the] default, the legal tools, *i.e.*, case law, necessary to conceive and argue the claim were not yet in existence and available to counsel.'" *Gatewood v. United States*, 979 F.3d 391, 395 (6th Cir. 2020) (quoting *Gibbs v. United States*, 655 F.3d 473, 476 (6th Cir. 2011), in turn quoting *Cvijetinovic v. Eberlin*, 617 F.3d 833, 837 (6th Cir. 2010)). "The novelty standard, however, is a high one: the petitioner's counsel must have had 'no reasonable basis upon which to formulate' the question now raised." *Gatewood*, 979 F.3d at 395 (quoting *Gibbs v. United States*, 655 F.3d 473, 476 (6th Cir. 2011), in turn quoting *Reed v. Ross*, 468 U.S. 1, 14, (1984)).

Ground one is an ineffective assistance of counsel claim. That is not a novel claim. *See Strickland*, 466 U.S. at 687. The underlying basis for Tyson's ineffective-assistance-of-trial-counsel claim, based on the Ohio Supreme Court decision in *Patrick*, also is not novel. An "'issue can hardly be novel' if, at the time of default, 'other defense counsel ha[d] raised the claim.'" *Gatewood*, 979

15

F.3d at 395 (quoting *Cvijetinovic*, 617 F.3d at 837). "If another litigant pressed the claim, the tools required to conceive it must have existed." *Gatewood*, 979 F.3d at 395. Here, other defense counsel had at the time of Tyson's case raised the claim that the Ohio Supreme Court adopted in *Patrick*. *See, e.g., State v. Patrick*, No. 17 MA 0091, 2019 WL 1453495, at *2–3 (Ohio Ct. App. March 29, 2019) (discussing and rejecting the defendant's claim that a trial court must consider the defendant's youth when sentencing the defendant to life in prison with the possibility of parole after 33 years), *rev'd and remanded*, 172 N.E.3d 952 (Ohio 2020). In fact, as explained above, Tyson himself raised the argument in November 2019.[6] So "[t]he tools to raise [Tyson's] present argument … certainly existed at the time of his default." *See Gatewood*, 979 F.3d at 395. And the fact that counsel pressing the argument in Ohio courts might not have prevailed doesn't change that outcome. *Id*. at 396 ("'futility cannot be cause' … where the source of the 'perceived futility' is adverse state or lower court precedent.") (quoting *Cvijetinovic*, 617 F.3d at 839–40), in turn quoting *McCoy v. United States*, 266 F.3d 1245, 1259 (11th Cir. 2001)). Tyson thus has not shown that an ineffective-assistance-of-trial-counsel claim based

---

[6]     This underscores the point that the argument ultimately adopted by the Ohio Supreme Court in *Patrick* was available for counsel to make and that appellate counsel did, in fact, make it. *Compare* Doc. 6-2, at 43–47 (Tyson's appellate brief citing cases), *with Patrick*, 2019 WL 1453495, at *2–3 (discussing the cases that Patrick's counsel cited); *see also Patrick*, 172 N.E.3d at 959–61 (citing some of the same cases).

on *Patrick* meets the "high" "novelty standard" to excuse Tyson's procedural default. *See id.*

To the extent that Tyson is alleging a variation of the novelty standard or something else as cause to excuse his procedural default of ground one, Tyson has forfeited any such claim because he hasn't articulated a coherent argument stating what, precisely, that cause is.[7] *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (internal citations omitted).

Moreover, Tyson hasn't shown actual prejudice to excuse his procedural default.[8] *See Coleman*, 501 U.S. at 750 (a petitioner must show both cause *and* prejudice to overcome a procedural bar). Indeed, Tyson wasn't given a life

---

[7]     Tyson is represented by counsel. So the Court is not required to construe Tyson's claim liberally. *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004) (pro se petitioners' pleadings are "treated to less stringent standards"). And even if the Court did liberally construe Tyson's pleadings, Tyson cannot expect the Court to construct arguments for him. *See id.*

[8]     Tyson doesn't allege actual innocence to overcome the procedural bar. So even if a claim of actual innocence could overcome the procedural bar in a habeas claim challenging a sentence, Tyson hasn't made an argument that he is entitled to it. *See Gatewood*, 979 F.3d at 395 ("it is an open question in this circuit whether actual innocence can excuse procedural default in a challenge to a noncapital sentence"(citing *Gibbs*, 655 F.3d at 477–78, and finding that "[b]ecause Gatewood does not present a claim of actual innocence, we need not address the question").

sentence—he was sentenced to between 25 and 29.5 years in prison. Doc. 6-2, at 18; *see also* Tyson, 2020 WL 6268408, at *6 (rejecting Tyson's assertion that Tyson received a life sentence). So Tyson hasn't shown that the rule announced in *Patrick* applies to his case.

Moreover, trial counsel raised at sentencing Tyson's youth, Doc. 10-2, at 9, belying Tyson's assertion that trial counsel "failed to present mitigating evidence of [Tyson's] youth at sentencing."[9] Doc. 1, at 6. Tyson claims that the "mitigating factors of youth and other factors listed in [Ohio Revised Code] 2929.12 could and should have been presented to the trial court but were not." Doc. 1-2, at 6. But trial counsel referenced the factors in Ohio Revised Code 2929.12, conceded some of them, and addressed others. Doc. 10-2, at 8–9. So Tyson hasn't shown that he was actually prejudiced by the constitutional error he alleges.

In sum, ground one is procedurally defaulted.

### 2.    *Ground two is not cognizable and fails on the merits*

In ground two, Tyson argues that the trial court erred when it sentenced him to consecutive sentences and improperly applied Ohio Revised Code § 2929.14. Doc. 1, at 8. He also argues that the record didn't support the trial court's sentence. *Id*. In his petition brief, Tyson adds that the Ohio court of

---

[9]    The trial court considered Tyson's age, too, when it sentenced Tyson. Doc. 10-2, at 14.

appeals relied on an unreasonable interpretation of the facts when it affirmed on appeal the trial court's sentence. Doc. 1-2, at 6–7.

Tyson's argument that the trial court improperly applied Ohio Revised Code § 2929.14 is not cognizable because state-law sentencing errors are not cognizable on federal habeas review. *See Estelle v. McGuire,* 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Austin v. Jackson*, 213 F.3d 298, 300 (6th Cir. 2000) (an alleged violation of state sentencing laws is not cognizable on federal habeas review) (citing *Pulley v. Harris*, 465 U.S. 37, 41 (1984)); *Thompson v. Bracy*, No. 1:19-cv-58, 2022 WL 676288, at *23 (N.D. Ohio Jan. 14, 2022) (claim that the trial court failed to make findings under Ohio Revised Code § 2929.14 before imposing consecutive sentences rests on state law and is not cognizable), *report and recommendation adopted*, 2022 WL 911260 (N.D. Ohio Mar. 29, 2022).

A claim alleging a constitutional violation due to consecutive sentences may be cognizable if the petitioner shows that the sentence exceeds the statutory range. *See, e.g., Croce v. Miller*, No. 1:15-cv-1758, 2017 WL 3394046, at *22 (N.D. Ohio July 12, 2017) (collecting cases), *report and recommendation adopted*, 2017 WL 3382665 (N.D. Ohio Aug. 7, 2017). But Tyson doesn't allege that the trial court sentenced him to more than the maximum penalty under the statute.

A sentence may also violate federal due process "if it is carelessly or deliberately pronounced on an extensive and materially false foundation which the defendant had no opportunity to correct." *Teneyuque v. Palmer*, No. 2:17-cv-13833, 2020 WL 1888828, at *9 (E.D. Mich. Apr. 16, 2020) (citing *Townsend v. Burke*, 334 U.S. 736, 741 (1948)); *see Stewart v. Erwin*, 503 F.3d 488, 495 (6th Cir. 2007). Tyson argues that the trial court "did not have any evidence as to harm resulting from the [aggravated robbery] offense," erred when it determined that the harm from aggravated robbery and attempted murder was "great" or "unusual," and "erroneously concluded that [Tyson's] conduct was part of an organized criminal activity merely because there was an accomplice to the underlying conduct." Doc. 1-2, at 7–8.

The Ohio court of appeals considered Tyson's claim that the trial court's sentence wasn't supported by the record as follows:

> {¶9} We begin with Tyson's first assignment of error, in which he argues that the trial court erred by imposing an aggregate sentence of 25 to 29 ½ years in prison. "'Trial courts have full discretion to impose any sentence within the statutory range.'" *State v. Smith*, 3d Dist. Seneca No. 13-15-17, 2015-Ohio-4225, ¶ 9, quoting *State v. Noble*, 3d Dist. Logan No. 8-14-06, 2014-Ohio-5485, ¶ 9, citing *State v. Saldana*, 3d Dist. Putnam No. 12-12-09, 2013-Ohio-1122, ¶ 20. As a fourth-degree felony, carrying a concealed weapon carries a sanction of 6 to 18 months' imprisonment. R.C. 2923.12(A)(2), (F)(1); R.C. 2929.14(A)(4). As first-degree felonies, aggravated robbery and attempted murder carry a stated minimum term of 3 to 11 years. R.C. 2911.01(A)(1), (C); R.C. 2923.02; R.C. 2903.02(A), (D); R.C. 2929.14(A)(1)(a). Each firearm specification carried a three-year mandatory prison

term. R.C. 2941.145(A). The trial court also ordered all of Tyson's sentences to run consecutively. Because (1) Tyson was sentenced on more than one felony, (2) aggravated robbery and attempted murder are qualifying felonies of the first degree, and (3) the trial court ordered that Tyson's prison terms be served consecutively, Tyson's maximum sentence, not including the firearm specifications, is the sum of the minimum terms imposed for Tyson's aggravated robbery and attempted murder convictions, the definite term imposed for Tyson's carrying a concealed weapon conviction, plus fifty per cent of the longest definite term for the most serious felony being sentenced. R.C. 2929.144(B)(2), (4).

{¶10} The trial court sentenced Tyson to 3 years' mandatory imprisonment for each of the firearm specifications. The trial court further sentenced Tyson to a minimum stated term of 9 years' imprisonment for first-degree felony aggravated robbery, a minimum stated term of 9 years' imprisonment for first-degree felony attempted murder, and a definite sentence of 12 months for fourth-degree felony carrying a concealed weapon. Thus, the trial court sentenced Tyson to a minimum term of 19 years' imprisonment to a maximum term of 23 ½ years' imprisonment plus an additional 6 years' imprisonment for the specifications. Accordingly, each of Tyson's individual sentences are within the corresponding statutory ranges. Further, the consecutive sentences fall within the appropriate statutory ranges and were appropriately calculated. "'[A] sentence imposed within the statutory range is "presumptively valid" if the [trial] court considered applicable sentencing factors.'" *Nienberg*, 2017-Ohio-2920, at ¶ 10, quoting *State v. Maggette*, 3d Dist. Seneca No. 13-16-06, 2016-Ohio-5554, ¶ 31, quoting *State v. Collier*, 8th Dist. Cuyahoga No. 95572, 2011-Ohio-2791, ¶ 15.

{¶11} R.C. 2929.11 provides, in pertinent part, that the "overriding purposes of felony sentencing are to protect the public from future crime by the offender

and others, to punish the offender, and to promote the effective rehabilitation of the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." R.C. 2929.11(A). To achieve the overriding purposes of felony sentencing, R.C. 2929.11 directs courts to "consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both." *Id*. In addition, R.C. 2929.11(B) instructs that a sentence imposed for a felony "shall be reasonably calculated to achieve the three overriding purposes of felony sentencing * * *, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders." "In accordance with these principles, the trial court must consider the factors set forth in R.C. 2929.12(B)-(E) relating to the seriousness of the offender's conduct and the likelihood of the offender's recidivism." *Smith* at ¶ 10, citing R.C. 2929.12(A). "'A sentencing court has broad discretion to determine the relative weight to assign the sentencing factors in R.C. 2929.12.'" *Id*. at ¶ 15, quoting *State v. Brimacombe*, 195 Ohio App.3d 524, 2011-Ohio-5032, ¶ 18 (6th Dist.), citing *State v. Arnett*, 88 Ohio St.3d 208, 215 (2000).

{¶12} Here, it is clear from the record that the trial court sentenced Tyson after considering the purposes of felony sentencing set forth in R.C. 2929.11(A) and the R.C. 2929.12(B)–(E) factors relating to the seriousness of Tyson's conduct and the likelihood of his recidivism. At the sentencing hearing, the trial court discussed the R.C. 2929.12(B) factors and found that the victims of the attempted murder and the aggravated robbery suffered "serious psychological harm" as a result of the offenses. (Nov. 4, 2019 Tr. at 8–9). *See* R.C. 2929.12(B)(2). The trial court also found that the aggravated robbery was committed as part of an

organized criminal activity. (Nov. 4, 2019 Tr. at 9). *See* R.C. 2929.12(B)(7). Further, the trial court stated that it considered the R.C. 2929.12(C) factors indicating that the offender's conduct is less serious than conduct normally constituting the offense, but found that none of the factors applied. (Nov. 4, 2019 Tr. at 9). *See* R.C. 2929.12(C).

{¶13} The trial court also reviewed the R.C. 2929.12(D) factors indicating that the defendant is likely to commit future crimes and noted that the defendant has not been rehabilitated to a satisfactory degree after previously being adjudicated a delinquent child. (Nov. 4, 2019 Tr. at 9). *See* R.C. 2929.12(D)(3). With respect to the R.C. 2929.12(E) factors indicating that the defendant is not likely to commit future crimes, the trial court noted that due to his age, Tyson had not been convicted of or pleaded guilty to any criminal offenses as an adult. (Nov. 4, 2019 Tr. at 9). *See* R.C. 2929.12(E)(2). The trial court also found that the defendant showed genuine remorse. (Nov. 4, 2019 Tr. at 9). *See* R.C. 2929.12(E)(5). The trial court noted that although Tyson's ORAS score was 19, indicating a moderate risk of reoffending, "the defendant's failure to respond favorably to sanctions imposed for the adjudications as a delinquent child would outweigh any factors indicting a less likelihood to recommit." (Nov. 4, 2019 Tr. at 9-10). (*See* PSI).

{¶14} Finally, the trial court found that a prison term is "consistent with the purposes of and principles" of felony sentencing. (Nov. 4, 2019 Tr. at 10). The trial court incorporated its findings into its sentencing entry. (Doc. No. 26).

{¶15} Nevertheless, Tyson argues that the trial court's findings were not supported by the record. First, Tyson argues that the trial court erred by finding that the aggravated robbery charge was part of an organized criminal activity under R.C. 2929.12(B)(7). Specifically, Tyson alleges that although he had an accomplice during the

commission of the aggravated robbery, the robbery was not committed as part of an organized criminal activity under R.C. 2929.12(B)(7). We disagree.

{¶16} "The fact that an offender had an accomplice is not sufficient to constitute organized criminal activity." *State v. Horch*, 3d Dist. Union No. 14-03-27, 2004-Ohio-1509, ¶ 14, citing *State v. Roberson*, 141 Ohio App.3d 626 (6th Dist.2001). Rather, to support a finding of organized criminal activity, the record must demonstrate that Tyson and his accomplice planned to engage in the aggravated robbery. *State v. Nichols*, 11th Dist. Lake No. 2005-L-017, 2006-Ohio-2934, ¶ 85, citing *State v. Bradford*, 11th Dist. Lake No. 2001-L-175, 2003-Ohio-3495, ¶ 28. That is, the record must demonstrate that the crime was premeditated rather than spontaneous. *See State v. Sari*, 11th Dist. Lake No. 2016-L-109, 2017-Ohio-2933, ¶ 26.

{¶17} Here, the record supports the trial court's finding that Tyson's aggravated robbery charge was part of an organized criminal activity under R.C. 2929.12(B)(7). First, Tyson's trial counsel conceded at the sentencing hearing that the aggravated robbery was committed as part of an organized criminal activity. (Nov. 4, 2019 Tr. at 4). Further, the facts detailed in the PSI support the trial court's finding that the aggravated robbery was committed as part of an organized criminal activity. According to the information contained in the PSI, on May 30, 2019, Tyson and Stiggers entered a gas station wearing masks and brandishing firearms and demanded the money in the cash register while pointing the firearms at the employees. (PSI). Tyson and Stiggers took money from the cash register and numerous packages of cigarettes and fled the building. (*Id.*).

{¶18} Additionally, one of the gas station employees recalled seeing Tyson enter the gas station several hours before the robbery to "scop[e] out" the business and confirm the location of the surveillance cameras. (*Id.*). After leaving the gas station, Tyson entered a

24

vehicle on the passenger's side door. (*Id*.). Law enforcement officers later determined that the vehicle belonged to Stiggers's sister, and Stiggers's sister confirmed that she allows Stiggers to borrow her car, including on the night of the incident. (*Id*.).

{¶19} Thus, there is clear and convincing evidence from which the trial court could find that the aggravated robbery occurred as part of an organized criminal activity under R.C. 2929.12(B)(7). *See State v. Allen*, 10th Dist. Franklin No. 10AP-487, 2011-Ohio-1757, ¶ 3, 30 (finding that Appellant's actions of propping open the door at a restaurant where he worked to allow his co-defendants to enter the restaurant with firearms and take money from the register was sufficient to conclude that the incident occurred as part of an organized criminal activity); *State v. Turner*, 6th Dist. Lucas No. L-16-1132, 2017-Ohio-995, ¶ 17-19 (concluding that the aggravated robbery charge was part of organized criminal activity where Appellant participated in concert with three other individuals to carry out the offense).

{¶20} Tyson also argues that the record does not support the trial court's finding that he did not respond favorably to sanctions imposed for adjudications as a delinquent child. Although Tyson admits that he did have prior involvement with the juvenile justice system, Tyson argues that the involvement was "minor" and that he responded favorably to the sanctions imposed by the juvenile justice system. We disagree.

{¶21} Tyson's PSI indicates that he was adjudicated a delinquent child on four occasions, beginning in 2015, when Tyson was only 13 years old. (PSI). Tyson's juvenile record included persistent disorderly conduct, menacing, failure to comply, and OVI. (*Id*.). Tyson also had an unauthorized use of a vehicle charge pending in the Allen County Juvenile Court when the present case was filed. (*Id*.). Accordingly, we find that the record supports the trial court's finding that Tyson did not respond favorably to sanctions imposed for adjudications as

25

a delinquent child. *See State v. King*, 3d Dist. Defiance No. 4-04-33, 2005-Ohio-3760, ¶ 16-17 (finding that the trial court did not err by using Appellant's juvenile record as justification for imposing a maximum, consecutive sentence and noting that R.C. 2929.12(D) requires a trial court to consider whether a defendant had previously been adjudicated delinquent).

{¶22} Finally, Tyson argues that the trial court did not assign the proper weight to the applicable mitigating and aggravating factors. However, we do not find Tyson's argument persuasive. The trial court has broad discretion to determine the relative weight to assign the R.C. 2929.12 factors, and based on this record, we cannot find any fault in the trial court's decision to afford greater weight to the aggravating factors than the mitigating factors. *See Smith*, 2015-Ohio-4225, at ¶ 15.

***

{¶31} We now turn to Tyson's second assignment of error, in which he argues that the record does not support the imposition of consecutive sentences. "Except as provided in * * * division (C) of section 2929.14, * * * a prison term, jail term, or sentence of imprisonment shall be served concurrently with any other prison term, jail term, or sentence of imprisonment imposed by a court of this state, another state, or the United States." R.C. 2929.41(A). R.C. 2929.14(C) provides:

> (4) * * * [T]he court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public,

and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶32} R.C. 2929.14(C)(4) requires a trial court to make specific findings on the record when imposing consecutive sentences. *State v. Hites*, 3d Dist. Hardin No. 6-11-07, 2012-Ohio-1892, ¶ 11; *State v. Peddicord*, 3d Dist. Henry No. 7-12-24, 2013-Ohio-3398, ¶ 33. Specifically, the trial court must find: (1) consecutive sentences are necessary to either protect the public or punish the offender; (2) the sentences would not be disproportionate to the offense committed; and (3) one of the factors in R.C. 2929.14(C)(4)(a), (b), or (c) applies. *Id.*

{¶33} The trial court must state the required findings at the sentencing hearing prior to imposing consecutive sentences and incorporate those

findings into its sentencing entry. *State v. Sharp*, 3d Dist. Putnam No. 12-13-01, 2014-Ohio-4140, ¶ 50, citing *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, ¶ 29. A trial court "has no obligation to state reasons to support its findings" and is not "required to give a talismanic incantation of the words of the statute, provided that the necessary findings can be found in the record and are incorporated into the sentencing entry." *Bonnell* at ¶ 37.

{¶34} Tyson does not argue that the trial court failed to make the requisite consecutive-sentencing findings under R.C. 2929.14(C)(4). Rather, Tyson contends that the record does not support the trial court's findings. At the sentencing hearing, the trial court stated:

> The Court has decided that the defendant shall serve the prison terms consecutively under 2929.14 because the Court finds that consecutive sentencing is necessary to protect the public from future crime and also to punish the defendant. I find that consecutive sentences are not disproportionate to the seriousness of the conduct and the danger that the defendant poses to the public. I also find that with respect to the Robbery and the Attempted Murder, those multiple offenses were committed as part of a course of conduct and I find the harm caused by the two multiple offenses was so great and unusual that no single prison term for any of the offenses committed would adequately reflect the seriousness of the defendant's conduct.

(Nov. 4, 2019 Tr. at 11-12). The trial court incorporated those findings into its sentencing entry. (Doc. No. 26). In its sentencing entry, the trial court stated:

28

> The Court has decided that the defendant shall serve the prison terms consecutively, pursuant to R.C. 2929.14(C)(4), because the Court finds that the consecutive sentence is necessary to protect the public from future crime or to punish the defendant and that consecutive sentences are not disproportionate to the seriousness of the defendant's conduct and to the danger the defendant poses to the public, and the Court also finds the following: * * * [a]t least two of the multiple offenses were committed as part of one or more courses of conduct and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the defendant's conduct.

(*Id*.). Accordingly, the record reflects that the trial court made the appropriate R.C. 2929.14(C) findings before imposing consecutive sentences and incorporated those findings into its sentencing entry.

{¶35} Nonetheless, Tyson argues that the record does not support the trial court's finding that the harm caused by two or more of the multiple offenses was so great or unusual that no single prison term adequately reflects the seriousness of Tyson's conduct. (Appellant's Brief at 12-13). Specifically, Tyson argues that because only the victim of the attempted murder charge provided a victim impact statement, the trial court was not able to find that the harm caused by the two or more offenses was great or unusual enough to justify the imposition of consecutive sentences. We disagree.

{¶36} At the sentencing hearing, Deputy Friemoth gave a victim impact statement and stated that the incident had a detrimental impact on him and his family. (Nov. 4, 2019 Tr. at 2-4). Deputy Friemoth stated that although his family has confidence in his abilities as a law enforcement officer, the incident "only served to heighten their fears" of him going to work each day. (*Id*. at 3). Deputy Friemoth stated that Tyson "nearly took [his] life" and that he and his family think about the incident "daily." (*Id*.).

{¶37} Although the victims of the aggravated robbery did not provide a victim impact statement to the trial court, the information contained in the PSI indicates that Tyson held a gun within inches of the face of one of the gas station employees. (PSI). Additionally, one of the employees told law enforcement that during the robbery, he was too frightened to even press the panic button near the register for fear he would be shot. (*Id*.). Accordingly, we find that the trial court did not err by finding that the harm caused by the multiple offenses was so great or unusual that no single prison term adequately reflects the seriousness of Tyson's conduct.

{¶38} In conclusion, the trial court properly considered the purposes and principles of felony sentencing and applied the relevant R.C. 2929.12 factors. Additionally, the trial court's findings regarding the purposes and principles of felony sentencing and the relevant R.C. 2929.12 factors were supported by the record. Furthermore, Tyson's sentence was not unconstitutional under the Eighth Amendment. Moreover, the trial court's consecutive sentence findings are supported by the record. Therefore, we conclude that there is not clear and convincing evidence that Tyson's sentence is not supported by the record or that his sentence is otherwise contrary to law. *See Nienberg*, 2017-Ohio-2920, at ¶ 23.

*Tyson*, 2020 WL 6268408, at *3–5, 7–8.

As for whether Tyson engaged in organized criminal activity, Tyson doesn't dispute that his trial counsel conceded that Tyson engaged in organized criminal activity, as the Ohio court of appeals observed. *Id.* at \*4; Doc. 10-2, at 8 (trial counsel stating that "[t]he aggravated robbery, we would concede, was committed for hire as part of an organized activity"). Tyson doesn't explain what about the Ohio court of appeals' decision was unreasonable, or that either state courts' findings were "carelessly or deliberately pronounced on an extensive and materially false foundation which the defendant had no opportunity to correct." *Teneyuque*, 2020 WL 1888828, at \*9.

In his Traverse, Tyson asserts that "[t]here was a finding of organized gang activity which not in the record at all." Doc. 12, at 19. But the trial court expressly stated that there was *no* finding of gang activity. Doc. 10-2, at 13.

As for whether Tyson's aggravated robbery victim suffered harm, the Ohio court of appeals explained that the pre-sentence investigation report indicated that "Tyson held a gun within inches of the face of one of the gas station employees …. [and] one of the employees told law enforcement that during the robbery, he was too frightened to even press the panic button near the register for fear he would be shot." *Tyson*, 2020 WL 62 68408, at \*8. Tyson doesn't explain how that finding is unreasonable or in any way false. The fact that the aggravated robbery victim chose not to submit a victim impact statement, Doc. 1-2, at 7, doesn't alter the reasonableness of the court's decision. Finally, the fact that the trial court expressed gratitude that worse

harm didn't occur, Doc. 10-2, at 12, doesn't show that the court erred, as Tyson suggests, Doc. 12, at 19.

Tyson hasn't shown that the trial court sentenced him "carelessly or deliberately" based on an "extensive and materially false foundation which [Tyson] had no opportunity to correct." *Teneyuque*, 2020 WL 1888828, at *9. He hasn't shown that the Ohio court of appeals' decision "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings." 28 U.S.C. § 2254(d)(2). So to the extent that ground two alleges a due process violation, it fails on the merits.

### Conclusion

For the reasons set forth above, I recommend that Tyson's Petition be denied.

Dated: October 30, 2023

*/s/ James E. Grimes Jr.*
James E. Grimes Jr.
U.S. Magistrate Judge

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days after the party objecting has been served with a copy of this Report and Recommendation.  28 U.S.C. § 636(b)(1).  Failure to file objections within the specified time may forfeit the right to appeal the District Court's order.  *See Berkshire v. Beauvais*, 928 F.3d 520, 530–31 (6th Cir. 2019).